IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC M. BOYD                           :

                                       :

        v.                             :  Civil Action No. DKC 2004-1535

                                       :

CARLOS M. GUTIERREZ                    :

                                       :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this
employment discrimination case is the motion to dismiss or, in
the alternative, for summary judgment by Defendant Carlos
Gutierrez, Secretary of the United States Department of Commerce
("Defendant").[1]  The issues are fully briefed and the court now
rules pursuant to Local Rule 105.6, no hearing being deemed
necessary.   For the reasons that follow, the court grants
defendant's motion.

**I.  Background**

Plaintiff Eric Boyd, an African-American male, was employed
by the U.S. Department of Commerce at the National Institute of
Standards and Technology ("NIST") as a personnel management
specialist in NIST's Human Resources Management Division from
1996 until November 2000.   On November 5, 2000, Plaintiff

---

[1] Carlos Gutierrez is substituted as Defendant in place of
the former Secretary of the U.S. Department of Commerce, Donald
L. Evans.  *See* Fed.R.Civ.P. 25(b)(1).

voluntarily left NIST and took a position with the U.S. Department of Energy.

In the complaint (paper 1), Plaintiff alleges that while employed at NIST he was discriminated against on the basis of sex and race.  Generally, Plaintiff asserts that because of discrimination he received a lower performance rating for the period of October 1, 1999, through September 30, 2000 ("fiscal year 2000"), and was denied training opportunities during that time.

In fiscal year 2000, Plaintiff was rated as "eligible,"[2] earned a total performance score of 74 out of a possible 100, and received a 2.4% pay increase.  Plaintiff did not receive a bonus.  The other personnel specialists evaluated by Plaintiff's supervisor, all of whom were Caucasian females, were each rated "eligible," and each earned a performance score of 80. (Paper 23, ex. H).  All three of these employees received a bonus.[3]

_____

[2] The possible rating alternatives were either "eligible," meaning that all performance elements scored in the eligible range, or "unsatisfactory," meaning that at least one element was rated unsatisfactory.  Plaintiff was rated on four different performance elements; he scored in the eligible range on each element.  (Paper 23, ex. D).

[3] As an attachment to its motion, Defendant provides performance data for NIST Administrative employees during the fiscal year 2000.  Although the employees are not identified by job title, the three employees who are listed as receiving a score of 80 all received bonuses.  (Paper 18, ex. 7).

Plaintiff argues that he "was given an unfavorable performance appraisal [by his Caucasian female supervisor] and held to different stand[ard]s and conditions than comparably classified female and white employees of the agency." (Paper 1). In a declaration signed on October 4, 2001, during administrative proceedings, Plaintiff stated that although his work was heavily "scrutinized," both Louise Parrish, Plaintiff's immediate supervisor, and other staff members also made mistakes but were not similarly treated. (Paper 18, ex. 3). Plaintiff also claimed that he was given one day to submit a list of his accomplishments for consideration in his performance review for fiscal year 2000, although "comparably classified female and white employees" were given a week; Plaintiff asserted that this negatively impacted his performance appraisal.[4] *Id.* at 3. To support his assertion that he should have received a more favorable evaluation, Plaintiff stated that his former supervisor, an African-American male, rated Plaintiff a score of 85 for the 1997 fiscal year and that Plaintiff's performance

---

[4] Plaintiff states that Ellen Dowd, Plaintiff's third-level supervisor, requested written accomplishments on August 21, 2000, to be due to each employee's immediate supervisor on August 25, 2000. Plaintiff was on vacation that week. When Plaintiff returned, his immediate supervisor "demanded that [Plaintiff] give her [his] written accomplishments that same day." (Paper 18, ex. 3).

ratings were lower after Ms. Parrish, a Caucasian female, began supervising him.[5]   Plaintiff also provided copies of e-mails containing positive feedback regarding his performance during fiscal year 2000 from Plaintiff's internal customers.   (Paper 18, ex. 3).

Plaintiff also asserts that he was denied training opportunities because of his race and/or sex.   In his complaint filed January 20, 2001, Plaintiff contended that he was denied training in January 2000 because his supervisor, a Caucasian female, failed to complete the necessary paperwork for Plaintiff to be enrolled.   (Paper 23, ex. D).   Plaintiff also asserted that he was denied training in June 2000 because although enrolled in a training program, Plaintiff's supervisor would not permit him to attend, even though another individual, a Caucasian female in the Human Resources Division, was permitted to attend.   (Paper 23, ex. D).   Plaintiff claims that the low performance rating and alleged denial of training resulted in a "loss of income."   (Paper 1, at 1-2).

---

[5] Defendant attaches to its motion performance data for NISD administrative staff during fiscal year 1997. (Paper 18, ex. 7). Excluding performance scores of zero, Plaintiff's score of 85 was the lowest rating given; two others also scored 85 and the remaining employees rated higher.   Plaintiff's score in fiscal year 1998 was 60; in fiscal year 1999 it was 72.   (Paper 18, ex. 7).

4

Plaintiff contacted an Equal Employment Opportunity counselor regarding his allegations on December 4, 2000; he filed a formal complaint with the Department of Commerce, Office of Civil Rights, on January 20, 2001.  The agency investigated Plaintiff's claim and issued a report on December 4, 2001. Plaintiff then requested a hearing before an Equal Employment Opportunity Commission ("EEOC") administrative law judge ("ALJ").  In a bench decision dated August 30, 2002, the ALJ dismissed Plaintiff's claims.  On October 2, 2002, the Department of Commerce issued a final decision adopting the conclusions of the ALJ; Plaintiff appealed the agency's decision to the EEOC, Office of Federal Operations.  On February 9, 2004, the EEOC affirmed the agency's decision and issued a right to sue letter.

Plaintiff filed a complaint in this court on May 14, 2004, alleging discrimination by Defendant on the basis of race and sex, under Title VII of the 1964 Civil Rights Act (42 U.S.C. § 2000e, *et seq.*).  Plaintiff seeks not less than $500,000, asserting that he suffered loss of income, benefits, training opportunities, and suffered severe emotional distress.

## II.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1987).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning

6

an essential element . . . necessarily renders all other facts
immaterial." *Celotex Corp.*, 477 U.S. at 323.  Thus, on those
issues on which the nonmoving party will have the burden of
proof, it is his or her responsibility to confront the motion
for summary judgment with an affidavit or other similar evidence
in order to show the existence of a genuine issue for trial.
*See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324.
However, "[a] mere scintilla of evidence in support of the
nonmovant's position will not defeat a motion for summary
judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th
Cir.), *cert. denied*, 522 U.S. 810 (1997).  There must be
"sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party. If the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted." *Anderson*, 477 U.S. at 249-50 (citations
omitted).

    Defendant has moved to dismiss for failure to state a claim
under Fed.R.Civ.P. 12(b)(6), or alternatively, for summary
judgment under Fed.R.Civ.P. 56.  A court considers only the
pleadings when_deciding a Rule 12(b)(6) motion.  Where the
parties present matters outside of the pleadings and the court
considers those matters as here, the court will treat the motion
as one for summary judgment.  *See Gadsby by Gadsby v. Grasmick*,

109 F.3d. 940, 949 (4ᵗʰ Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F.Supp.2d 551, 556 (D.Md. 2003).

**III.    Analysis**

There are two methods for proving intentional discrimination in employment: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).  For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue."  *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4ᵗʰ Cir. 2001) (internal quotation marks omitted), *cert. denied*, 535 U.S. 933 (2002).  In order to overcome a summary judgment motion based upon this method of proof, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact."  *Id.* (internal quotation marks omitted).  More specifically, the plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  *Id.* at 391-92 (internal quotation omitted).  If such evidence is lacking, the plaintiff

8

nevertheless may proceed under *McDonnell Douglas*. *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Under the *McDonnell Douglas* framework, the plaintiff first must establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the defendant succeeds in doing so, that will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv.*

*Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

### A.  Failure to Provide Training

Defendant argues that Plaintiff is precluded from asserting any claims of discrimination based on the alleged denials of training in January and June 2000 because he failed to report his claims to an employment counselor within the requisite time frame. (Paper 18).  The general rule is that an aggrieved federal employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).  This time period is not jurisdictional however, and may be subject to waiver, estoppel, and equitable tolling. *See Zipes v. Trans World Airways*, 455 U.S. 385, 393 (1982); *Zografov v. V.A. Med. Ctr.*, 779 F.2d 967, 969 (4th Cir. 1985).  In his opposition memorandum, Plaintiff argues that Defendant waived any timeliness defense because it did not assert it during the administrative process. (Paper 23).  In its reply, Defendant, citing *Boarman v. Sullivan*, 769 F.Supp. 904, 908 (D.Md. 1991), argues that because Plaintiff seeks *de novo* review, the court may consider new arguments, including a timeliness defense, not

previously asserted.[6]   (Paper 26).   *Boarman*, however, is distinguishable.   In *Boarma*n, the defendant did assert a timeliness defense during the administrative process and the EEOC rejected it.   *Id*.   The court stated that the defendant was not precluded from re-asserting the defense even though it had been unsuccessful during the administrative process because the plaintiff sought *de novo* review and therefore the court could re-examine the timeliness argument.   Here, Defendant did not assert a timeliness defense at any stage of the administrative process; it consistently presented substantive arguments disputing the merits of Plaintiff's claims and adopted without modification the administrative law judge's opinion, which did not address the timeliness of Plaintiff's claims.   (Paper 18, ex. 10).   Hence, the relevant question is whether Defendant waived a timeliness defense by not asserting it at all during the administrative proceedings.   The Fourth Circuit has not definitively ruled on this issue,[7] and the other circuits lack

---

[6] Defendant also cites *Moore v. Devine*, 780 F.2d 1559 (11th Cir. 1986) and *Prudencio v. Runyon*, 986 F.Supp. 343 (W.D.Va. 1997) in support.   (Paper 26).   Neither of these cases directly support the argument that Defendant did not waive a timeliness defense by failing to raise it during the administrative process nor are they binding on this court.

[7] In an unpublished opinion, *Broome v. West*, No. CIV. AMD 95-3587, 1995 WL 855450, at *4 (D.Md. April 30, 1996), the court
(continued...)

uniformity on its resolution. *See Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 45 (1st Cir. 2005) (finding no waiver where the defendant failed to raise the timeliness defense before the EEOC where the EEOC did not reach a decision on the merits); *Bruce v. Dep't of Justice,* 314 F.3d 71, 74 (2nd Cir. 2002) ("An agency waives a timeliness objection by making an express finding that the complaint was timely or failing to appeal an EEOC determination of timeliness."); *Ester v. Principi*, 250 F.3d 1068, 1071-72 (7th Cir. 2001) (noting that the courts of appeal have "not produced uniform results" on the issue; holding that when an agency decides the merits of a complaint, without addressing the question of timeliness, it has waived a timeliness defense in a subsequent lawsuit); *Rowe v. Sullivan*, 967 F.2d 186, 191 (5th Cir. 1992) ("In order to waive a timeliness objection, the agency must make a specific finding that the claimant's submission was timely."). Because Plaintiff fails to establish a *prima facie* case of discrimination regarding the alleged training denials, this court need not determine whether Defendant waived a timeliness defense by not asserting it during the administrative proceedings.

---

[7](...continued)
noted that waiver may be appropriate "in very limited circumstances, such as where . . . the defendant has delayed in alleging a timeliness defense."

In order to establish a *prima facie* case, a plaintiff must show that: (1) the plaintiff is a member of a protected class; (2) the defendant provided training to its employees; (3) the plaintiff was eligible for the training; and (4) the plaintiff was not provided training under circumstances giving rise to an inference of discrimination. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649-50 (4th Cir. 2002). A plaintiff must also show that denial of training was an "adverse employment action" – there must be "evidence that the terms, conditions, or benefits of [his] employment were adversely affected." *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997). *See also Trammell v. Balt. Gas & Elec. Co.*, 279 F.Supp.2d 646, 655 (D.Md. 2003).

Plaintiff alleges that he was "denied" training on two different occasions – in January and June 2000. Plaintiff satisfies the first three elements to establish a *prima facie case*. Plaintiff is a member of a protected class because he is an African-American male. *See Newport News Shipbuilding and Dry Dock Co. v. EEOC*, 462 U.S. 669, 682 (1983) (stating that Title VII protects men against sex discrimination). *See also Oncale v. Sundowner Offshore Svcs., Inc.*, 523 U.S. 75, 78 (1998). Further, there is no dispute that Defendant provided training to

its employees, or that Plaintiff was eligible for training in the two instances in question.   With regard to the January training, however, Plaintiff cannot establish that he was denied training.   Plaintiff claims that his supervisor failed to complete the paperwork needed for him to attend, but the evidence is undisputed that the January training was cancelled due to inclement weather, and Plaintiff took the same training course the next month. (Paper 18, ex. 3, page 8 of 11).   Hence, Plaintiff fails to establish that he was not provided training and cannot establish a *prima facie* case.

With regard to the June 2000 training, Plaintiff averred that he was scheduled to attend the course, but when his supervisor realized that the training was going to conflict with an internal training session, she asked him if he could reschedule the training.   (Paper 23, ex. D).   The internal training was cancelled, and Plaintiff argues that although another staff member was then allowed to attend the external training, he was not.   (Paper 18, ex. 3, page 8 of 11).   First, there is no evidence that Plaintiff would not have been permitted to take the training at a future date, and therefore that he was "denied" training.   Even assuming that asking Plaintiff to postpone the training was a "denial," Plaintiff's claim still fails because Plaintiff has provided no evidence

that failing to attend the June training adversely affected the terms, conditions, or benefits of his employment.  Conversely, the undisputed facts show that Plaintiff was given many training opportunities, attending seventy-eight hours of training in fiscal year 2000.  (Paper 18, ex. 6).  Moreover, there is nothing in Plaintiff's fiscal year 2000 performance review, (paper 23, ex. D), to suggest that he was penalized for not taking the June 2000 training course, and no evidence that his opportunity for promotion would be impacted because of his failure to take this June course.  *See Von Gunten v. Maryland*, 243 F.3d 858, 869 (4th Cir. 2001) (finding denial of requests to attend seminars was not an adverse employment action); *Jeffers v. Thompson*, 264 F.Supp.2d 314, 329 (D.Md. 2003) ("Although something less than an 'ultimate employment decision' may constitute an adverse employment action, Title VII does not remedy everything that makes an employee unhappy."); *Chika v. Planning Research Corp.*, 179 F.Supp.2d 575, 585 (D.Md. 2002) (holding that plaintiff failed to establish how the denial of two training requests altered the terms and conditions of his employment where he was afforded numerous training opportunities).

   **B.  Performance Rating**

Plaintiff also claims that he was subject to a discriminatory performance appraisal process. Plaintiff makes several allegations, including that he was held to different performance standards than Caucasian females, and that he was given a shorter time frame within which to complete and submit a list of his accomplishments for consideration in his evaluation. Plaintiff appears to argue that these actions resulted in a lower performance score for the fiscal year 2000.[8]

Generally, in order to establish a *prima facie* case of discrimination, Plaintiff must show that: "(1) [he] is a member of a protected class; (2) [he] was performing [his] duties in a satisfactory manner; (3) [he] was subjected to an adverse employment action;[9] and (4) [he] was treated differently [from]

---

[8] Although Plaintiff argues that the shorter time frame within which to submit his accomplishments negatively impacted his performance review, he never expressly states that because he was held to different standards it resulted in a lower rating. Because Plaintiff must show an adverse employment action to establish a Title VII discrimination claim, the court will assume Plaintiff is asserting a relationship between the alleged variation in standards and Plaintiff's performance evaluation.

[9] A low performance evaluation could affect a term, condition, or benefit of employment, and therefore constitute an adverse employment action. *Von Gunten*, 243 F.3d at 867 (citing *Spears v. Missouri Dep't of Corrections & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000) ("An unfavorable evaluation is actionable only where the employer subsequently uses the
(continued...)

similarly situated individuals outside of [his] protected class." *Nichols v. Harford County Bd. Of Educ.*, 189 F.Supp.2d 325, 340 (D.Md. 2002).

Plaintiff's claim most closely parallels a claim of discriminatory discipline -- Plaintiff alleges that although other employees made mistakes, his work was scrutinized more heavily, resulting in a lower performance rating as compared to others in Plaintiff's division. In a case alleging discriminatory discipline, the *prima facie* paradigm shifts slightly:

> [A] plaintiff must show: (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) the disciplinary measures enforced against him were more severe than those enforced against those other employees.

*Cook v. CSX Transportation Company*, 988 F.2d 507, 522 (4th Cir. 1993).

Viewing the facts in the light most favorable to him, Plaintiff fails to establish a *prima facie* case. Defendant argues and the evidence, including Plaintiff's declaration,

---

[9](...continued)
evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment."))

shows that Plaintiff made mistakes in the "handling and coding of actions."[10] (Paper 18, ex. 3; Paper 23, ex. D).  Further, on his performance evaluation, Plaintiff's supervisor noted that this had been a "persistent concern that had been discussed with Plaintiff in the past." (Paper 23, ex. D).  Plaintiff does not point to other similarly situated employees outside of Plaintiff's protected class who made comparable mistakes but who received higher performance scores.  In Plaintiff's declaration, (paper 18, ex. 3), he generally asserts that other NIST employees made mistakes as well, including Ms. Parrish, Plaintiff's supervisor, but Plaintiff provides no evidence that the mistakes were similar to those that he made in either kind or frequency.  See *Turner v. Gonzales*, 421 F.3d 688, 695 (8th Cir. 2005) (finding no discrimination because plaintiff, who received a lower performance rating, had a "pattern of ignoring internal workplace responsibilities and deadlines" while similarly situated others made only isolated mistakes).  Instead, Plaintiff generally downplays the significance of his mistakes:  "Ms. Parrish would put heavy emphasis [on] evaluating my performance on errors that have no statutory or regulatory

---

[10]   Plaintiff's supervisor notes these errors on his evaluation form.  (Paper 23, ex. D).  In addition, attached to Plaintiff's declaration is a note to Plaintiff's supervisor from a third-party communicating a mistake that Plaintiff made. (Paper 18, ex. 3).

impact. The mistakes she would criticize me on dealt with issues that could be handled by computer automation as opposed to statu[t]es and regulations." (Paper 17, ex. 3, at 3). It is not this court's role to act as a super-personnel agency that categorizes what errors are significant and which are petty in a particular job – the court's role is to determine whether Plaintiff has forecast sufficient evidence to establish a *prima facie* case of discrimination, which Plaintiff fails to do. There is no evidence that Plaintiff's performance score was lower than the other employees in Plaintiff's position because they were Caucasian females and he was an African-American male; instead, all evidence points to the fact that Plaintiff consistently made coding and classification errors and that this was the basis for Plaintiff's performance score. (Paper 18, exs. 7, 9). Accordingly, Plaintiff fails to establish a *prima facie* case of discrimination and a grant of summary judgment to Defendant is proper. *See Martin v. Montgomery County Public Schs.*, 223 F.Supp.2d 742, 743-44 (D.Md. 2002) (finding plaintiff failed to establish a *prima facie* case of discrimination where he "offered nothing more than his own subjective opinions that the performance evaluations given to him were unfair" and "presented no objective evidence that a similarly situated white person, i.e., one having substantial performance difficulties,

19

was treated any differently than he"); *Porter v. Nat'l Con-Sev, Inc.*, 51 F.Supp.2d 656, 660 (D.Md. 1998) (stating that Title VII does not prohibit employment decisions based on job performance).[11]

## III.  Plaintiff's Request for Discovery

Because Plaintiff has not produced evidence sufficient to withstand summary judgment, it is necessary to address his claim that an opportunity to conduct discovery should precede consideration of Defendant's motion for summary judgment. Generally speaking, "summary judgment must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson,* 477 U.S. at 250 n.5.; Fed.R.Civ.P. 56(f).  "'Sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party'" and when a case involves complex factual questions about intent and motive.  *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d

---

[11] Instead of asserting that Plaintiff failed to prove a *prima facie* case, Defendant assumes the *prima facie* elements are met and frames its argument by stating that it had a nondiscriminatory reason to support Plaintiff's performance rating -- Plaintiff's consistent classification and coding errors -- and that Plaintiff failed to show that this reason was pretextual.  Whether the court finds that Plaintiff failed to prove a *prima facie* case or failed to show Defendant's reason is pretextual, the result is the same.

214, 247 (4th Cir. 2002), quoting 10A Charles A. Wright, Arthur
R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* §
2741 at 241 (3rd ed. 1998).

A party opposing summary judgment may not merely assert in
the opposition that discovery is necessary.  Rather, the party
must file an affidavit that "particularly specifies legitimate
needs." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995).[12]
As this court has noted, a request for discovery will not be
granted if the party merely wishes to conduct a "fishing
expedition" in search for evidence that may be helpful. *Morrow
v. Farell*, 187 F.Supp.2d 548, 551 (D.Md. 2002).  In addition to
the  specificity requirement, a party must present reasons why
it cannot put forth the necessary opposing evidence, *see Pine
Ridge Coal Co. v. Local 8377, United Mine Workers of America,*
187 F.3d 415, 421-22 (4th Cir. 1999), and must establish that the
desired evidence could be sufficient to create a genuine issue
of material fact. *See McLaughlin v. Murphy*, 372 F.Supp.2d 465,

---

[12] An affidavit may not be absolutely necessary if the party
makes objections that satisfy the purpose of providing an
affidavit and is not lax in pursuing discovery. *Harrods Ltd.*,
302 F.3d at 244; *Chernova v. Elec. Sys. Servs., Inc.*, 247
F.Supp.2d 720, 723 (D.Md. 2003)(noting an affidavit is not
absolutely necessary to satisfy Rule 56(f), but movant must show
that 56(f) protections are invoked in good faith and to "afford
the trial court the showing necessary to assess the merit of a
party's opposition").

470 (D.Md. 2004).  If a party meets this burden, "the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed.R.Civ.P. 56(f).

In Plaintiff's opposition to Defendant's motion, Plaintiff argues that summary judgment is "premature" because Plaintiff "has not had the benefit of the discovery."  (Paper 23, at 5). Plaintiff states: "During discovery, Plaintiff could depose witnesses and obtain documents regarding the performance evaluation process, training opportunities, and other matters germane to his claims." *Id*.  Plaintiff attaches an affidavit to his opposition memorandum, which states in its entirety: "Affiant, Eric Boyd, a competent witness over the age of eighteen (18), states on his own personal knowledge that he is unable to present facts in opposition to Defendant's Motion for Summary Judgment, without the benefit of discovery in this matter."  Plaintiff's affidavit is not sufficient to grant a stay of this court's decision pending discovery.  Plaintiff's affidavit fails to "particularly specify legitimate needs," *Nguyen*, 44 F.3d at 242, and is more akin to a "fishing expedition" to find helpful evidence.  *See Morrow*, 187 F.Supp.2d at 551.  Plaintiff does not present any reason why he cannot put

22

forth the necessary opposing evidence, or establish that the desired evidence could be sufficient to create a genuine issue of material fact. *See Pine Ridge Coal Co.,* 187 F.3d at 421-22. In fact, this case was investigated at the administrative level and a wealth of information is already available. Therefore, summary judgment for Defendant is proper at this time.

## IV.  Conclusion

For the foregoing reasons, the court will grant Defendant's motion for summary judgment.  A separate Order will follow.

                        _____/s/_____
                        DEBORAH K. CHASANOW
                        United States District Judge

                        October 17, 2005